UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICOLE A. O., | ) |
| | ) |
|         *Plaintiff* | ) |
| | ) |
| v. | )   No. 2:20-cv-00238-GZS |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security,* | ) |
| | ) |
|         *Defendant* | ) |

**REPORT AND RECOMMENDED DECISION**[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing past relevant work as a substance abuse counselor, a program manager, a resident supervisor, or a program director or, in the alternative, work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in failing to find severe mental impairments of post-traumatic stress disorder (PTSD) and bipolar disorder with dissociative episodes and in evaluating the opinion of a treating social worker, Vanessa Davy, LCSW. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 10) at 2-9. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2023, Finding 1, Record at 12; that she had the severe impairments of asthma, in combination with allergies, Finding 3, *id*. at 13; that she had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the nonexertional limitations that she could occasionally be exposed to atmospheric conditions, humidity, and wetness, albeit never in excessive amounts, and could never be exposed to extreme cold or extreme heat, Finding 5, *id*. at 17; that she was capable of performing past relevant work as a substance abuse counselor, a program manager, a resident supervisor, and a program director, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 21; that, in the alternative, considering her age (46 years old, defined as a younger individual, on her alleged disability onset date, September 15, 2017), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 23; and that she, therefore, had not been disabled from September 15, 2017, her alleged onset date of disability, through the date of the decision, September 16, 2019, Finding 7, *id*. at 24.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Relevant Background

The record contains three expert opinions bearing on the severity of the plaintiff's mental impairments: those of agency nonexamining consultants Brian Stahl, Ph.D., on initial review of the plaintiff's claim on May 16, 2018, and David R. Houston, Ph.D., on reconsideration on October 30, 2018, that those impairments were nonsevere, *see* Record at 72-73, 99-100, and that of LCSW Davy, dated June 6, 2019, that the plaintiff could not respond appropriately to supervision, coworkers, and usual work situations or deal with changes in a routine work setting and would be

off-task at least 15 percent of the time and miss work or leave early at least two times per month due to her impairments, *see id*. at 954. LCSW Davy explained, "Currently, dissociative episodes are interfering with ability to function, as are symptoms of mood instability which negatively impact communication/relationship skills which are key in the workplace." *Id*.

The ALJ acknowledged that the plaintiff alleged that she had (i) alteration of consciousness, anxiety, and dissociative identity disorder that caused "episodes of blacking out, where she loses time, cannot leave her home alone, 'wakes up' hours later, and has no recollection of time passed" and (ii) "difficulties with talking, memory, completing tasks, concentration, understanding, getting along with others, and handling stress." *Id*. at 18 (citations omitted). However, she found those alleged difficulties inconsistent with the medical and other evidence of record. *See id*. She explained, in deeming the plaintiff's mental impairments nonsevere:

> The [plaintiff] worked part time in 2018 and 2019 and was working on her Ph.D. throughout the adjudication period. She has completed all requirements except her dissertation, which she expected would be complete in December. [She] participated in a partial hospitalization program with some abnormal mental status examination findings for a period in the fall of 2018, yet objective mental status examinations were generally normal. . . . [T]he evidence shows that the conditions were generally controlled through only conservative treatment and medication, with no evidence of any significant or ongoing functional limitations on the [plaintiff].

*Id*. at 13 (citations omitted).

She noted that, while the plaintiff's mental status examinations revealed "tearfulness [and] anxious and depressed moods at times[,]" the plaintiff also was found to be alert, with a cooperative attitude, full orientation, fluent speech, an appropriate fund of knowledge, appropriate dress, normal movement, appropriate eye contact, normal speech, normal immediate recall, normal memory, excellent general fund of information, and intact insight and judgment. *Id*. at 14 (citations

omitted). She added that the plaintiff "demonstrated improved mood, including showing euthymic mood on a number of occasions." *Id*. (citations omitted).

She further described the plaintiff's "academic activities, work activities, and activities of daily living" as inconsistent with her "alleged level of mental health severity[,]" pointing to her "part-time work writing short articles" and delivering cases of books, her successful completion of "the steps necessary to pursue a Ph.D. in psychology, including being able to travel to Arizona for six weeks in January and February of 2018 to complete her residency[,]" her report in July 2018 that she was "consumed with setting up her new home with her partner" and October 2018 that she was "fixing up a new home that her boyfriend had purchased" and "being discharged from treatment" to attend a long-planned birthday event for her mother in Michigan, her indication in January 2019 that "she was doing well from a mental standpoint[,]" and her indication in April 2019 that "her first video meeting with her dissertation advisor went well, and that she had been active in her hobbies that week[.]" *Id*. (citations omitted).

The ALJ stated that the plaintiff's vocational employment specialist "confirmed on April 23, 2019 that the [plaintiff] and the specialist had continued to research online school positions and other positions for the [plaintiff], with flexible hours and requirements[,]" at which time the plaintiff verified "that she had completed her schooling for her Ph.D." and planned to conduct research to complete her dissertation. *Id*. The ALJ added that, in May 2019, the plaintiff continued to work on her dissertation and met with a doctor whom she had found to review it, and in April and May 2019, "she had an improved mood during a recent trip to South Carolina, during which time she made a public speech at an Alcoholic Anonymous conference for seventy-five minutes,

5

in front of an audience of 2000 people[,]" and "described the speech as going well." *Id*. at 14-15 (citation omitted).[2]

The ALJ explained that she found the Davy opinion unpersuasive because it did "not cite any objective findings or other support[,]" "mental status examinations were largely unremarkable during treatment," and "the assessment was completed on a checklist-style form, and as such, was exceptionally vague and conclusory[,]" with LCSW Davy failing "to adequately define the [plaintiff]'s functional limitations" or "to address whether the [plaintiff] had none, mild, marked, or extreme limitations in her mental health functional domains." *Id*. at 20. She added that LCSW Davy's opinion was "inconsistent with the [plaintiff]'s own activities of daily living, work activity, and academic activity[.]" *Id*. She explained, "For at least these reasons, the statement is inconsistent with, and unsupported by, the clinical and longitudinal evidence[.]" *Id*. By contrast, the ALJ deemed the Stahl and Houston opinions "persuasive for the most part[.]" *Id*.

### B. Alleged Errors

#### 1. Failure to Find Severe Mental Impairment

The plaintiff acknowledges that she "can function at a high level when not episodic," contending that this is why Ms. Gulliver recommended part-time, flexible work. Statement of Errors at 6. She asserts that, in finding no severe mental impairment, the ALJ misconstrued Ms. Gulliver's notes and other evidence of record as supportive of the conclusion that she was not disabled. *See id*. at 4-5. She acknowledges that, at Step 2, a claimant must show that the correction of an error would lead to a different outcome. *See id*. at 8 (citing *Bolduc v. Astrue*, Civil No. 09-

---

[2] The ALJ further found that, "concerning the therapist's assessment of dissociative identity disorder, objective neurological testing" – specifically, an MRI of the brain in January 2018 and a related encephalogram (EEG) – yielded "normal results[.]" Record at 13. The plaintiff correctly notes that the test at issue was performed to rule out the existence of a seizure disorder, and, thus, cannot fairly be construed to undercut the plaintiff's claims of dissociative episodes. *See* Statement of Errors at 4-5; Record at 506. Nonetheless, for the reasons discussed herein, the ALJ's conclusion that the plaintiff's mental impairments were nonsevere is supported by substantial evidence.

6

220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010)). However, she contends that she meets that requirement because both LCSW Davy and Ms. Gulliver indicated that she was incapable of sustained full-time work, aligning this case with *Plourde v. Colvin*, No. 1:12-cv-194-JAW, 2013 WL 1345519 (D. Me. Mar. 14, 2013), and *Priest v. Colvin*, No. 1:15-cv-00379-JHR (D. Me. Dec. 16, 2016). She adds that the ALJ erred in relying on the opinions of Drs. Stahl and Houston because they did not have the benefit of review of the Davy and Gulliver materials. *See id*. at 7. I am unpersuaded.

"The amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Id*. (citations and internal quotation marks omitted). This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

Drs. Stahl and Houston acknowledged that the plaintiff had been assessed with dissociative identity disorder and had complained to treating sources of dissociative episodes in which she lost days or parts of days and that, despite a range of normal findings on mental status examinations,

she had also been noted to be depressed and anxious. *See* Record at 71, 98. Dr. Houston further noted that, on October 8, 2018, the plaintiff's then-treating social worker noted that she "[d]issociated for 16 minutes[,] which was witnessed." *Id*. at 98. Yet, both consultants concluded that the plaintiff's mental impairments were nonsevere, explaining:

> MER [Medical evidence of record] supports mood disorder, anxiety disorder. Consistently good mental status. History of complex work. Recently in the process of completing Ph.D. and went to Arizona for 6 weeks for residency part of program. Conditions do not meet or equal a listing and associated limitations are non-severe.

*Id*. at 72-73, 99. The plaintiff does not explain, and it is not otherwise apparent, how the Davy progress notes unseen by Drs. Stahl and Houston are not cumulative of the evidence they did see. To the extent that she relies on the Davy opinion, the ALJ supportably discounted it for the reasons discussed below.

At oral argument, the plaintiff's counsel contended that the Gulliver notes were of particular significance because Ms. Gulliver, a vocational specialist, concurred with the plaintiff in a setting having nothing to do with the instant disability claim that she was not capable of full-time employment. Yet, he contended, the ALJ erroneously deemed the Gulliver notes supportive of a finding that the plaintiff retained the capacity to work full time.

As the commissioner suggests, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 11, Ms. Gulliver's opinion would have been inconsequential, if available to Drs. Stahl and Houston. Pursuant to applicable regulations, a statement such as that of Ms. Gulliver that a claimant is not "able to perform regular or continuing work" is "inherently neither valuable nor persuasive to the issue of whether" a claimant is disabled, meriting no analysis, 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Beyond that, the ALJ did not err in deeming both the part-time work the plaintiff performed during the relevant period and her efforts with Ms. Gulliver's help to find new part-time work indicative of greater functional

ability than claimed. *See, e.g.*, *Carver v. Colvin*, No. 1:13-cv-390-JHR, 2014 WL 7384777, at *4 (D. Me. Dec. 28, 2014) ("part-time work may be suggestive of greater functional ability than a claimant has alleged").

Finally, *Plourde* and *Priest* are distinguishable. In *Plourde*, evidence unseen by agency nonexamining consultants reflected a suicide attempt and inpatient psychiatric hospitalization, following which providers continued to record Global Assessment of Functioning (GAF) scores indicative of serious symptoms. *See Plourde,* 2013 WL 1345519, at *4-5. In *Priest*, the ALJ rejected the opinions of both agency nonexamining consultants and a treating professional that the claimant suffered from a severe mental impairment although there was "no professional opinion to the contrary in the record." *Priest*, 2016 WL 7335583, at *3. Here, unlike in *Plourde*, the plaintiff has not shown that Drs. Stahl and Houston lacked the benefit of review of material later-submitted evidence, and, unlike in *Priest*, the ALJ relied in part on opinions of experts (Drs. Stahl and Houston) that the plaintiff's mental impairments were nonsevere.

In short, because both the Davy and Gulliver notes were cumulative of evidence seen by Drs. Stahl and Houston, and, for the reasons discussed below, the ALJ supportably rejected the Davy opinion, also unseen by them, the Stahl and Houston opinions stand as substantial evidence in support of the ALJ's finding that the plaintiff's mental impairments were nonsevere.

### 2. Rejection of Davy Opinion

The plaintiff contends that the ALJ erred in rejecting the Davy opinion when she (i) criticized the use of a checklist form, even though the form carried LCSW Davy's explanation and was submitted along with her extensive notes, (ii) wrongly deemed LCSW Davy's opinion inconsistent with her records, when those records were "replete with references to dissociative episodes, trouble with schoolwork, and trouble with relationships, just as notated by Ms. Davy on the form[,]" and (iii) overlooked the consistency between the Davy opinion and that of Ms.

Gulliver.  Statement of Errors at 5-7.  She argues that all factors relevant to the evaluation of opinion evidence weighed in favor of the Davy opinion.  *See id*. at 9.

Regulations applicable to claims filed on or after March 27, 2017, as was this one, *see* Record at 10, provide, "We will articulate in our . . . decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record[,]" 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  However, the decision-maker need only explain his or her consideration of the two most important factors in that evaluation, supportability and consistency. *See id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be."  *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1).  With respect to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ duly articulated her findings with respect to both key factors, reasonably concluding that both cut against adoption of the Davy opinion.  With respect to supportability, she correctly noted that LCSW Davy had filled out a checkbox form and had cited no objective evidence in support of her findings.  *Compare* Record at 20 *with id*. at 954.  LCSW Davy's explanation did not rectify that omission: she merely stated that dissociative episodes were "interfering with ability to function, as are symptoms of mood instability[,] which negatively impact communication/relationship skills which are key in the workplace."  *Id*. at 954.

With respect to consistency, the ALJ deemed the Davy opinion inconsistent not only with LCSW Davy's own notes but also with largely unremarkable mental status examinations and the

10

plaintiff's activities of daily living, work activity, and academic activity. *See id*. at 20. As the commissioner notes, "the ALJ identified a host of activities Plaintiff could complete despite her allegedly disabling mental symptomatology, such as traveling, completing coursework, making speeches, visiting with family, making home improvements, refinishing furniture, writing short articles, and making deliveries." Opposition at 10 (citations omitted).

Remand, accordingly, is unwarranted on the basis of the plaintiff's second point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of June, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge